In the Matter of EARL BIVINS, as President of the Sullivan County Chapter of the Civil Service Employees Association, Inc., Petitioner, v ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board of the State of New York, Respondents; CLAYTON NEFF, as Director of New York Council 66, American Federation of State, County and Municipal Employees, AFL-CIO, et al., Intervenors-Respondents.

Third Department, December 30, 1976

*Roemer & Featherstonhaugh (James W. Roemer* of counsel), for petitioner.

*Martin L. Barr (Anthony Cagliostro* and *Jerome Thier* of counsel), for respondents.

*Blitman & King (James R. La Vaute* of counsel), for Clayton Neff, intervenor-respondent.

*William C. Rosen, County Attorney,* for County of Sullivan, intervenor-respondent.

MAHONEY, J. On May 3, 1974 the Service Employees International Union, AFL-CIO (SEIU) filed a representation petition seeking decertification of the Sullivan County Chapter of the Civil Service Employees Association (CSEA) as the exclusive negotiating representative of a unit of county employees. On May 8, 1974 New York Council 66, American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) filed similar petitions seeking decertification of CSEA as exclusive representative of a unit of blue collar employees and a unit of foremen. Prior to May, 1974 CSEA had been the sole bargaining agent for all 486 county employees, 186 of whom are employed in the Department of Public Works (DPW).

After a hearing before the director of representation the county, which had originally supported the continuance of CSEA as the sole county employee representative, changed its position and joined SEIU and AFSCME in seeking three separate units of representation. The director determined that there should be two units, all regular full and part-time employees in one unit and all supervisory DPW employees in the second. SEIU and AFSCME filed exceptions to the director's determination and, thereafter, PERB modified the director's decision and mandated the creation of three units consisting of: (1) employees of the DPW; except (2) supervisory DPW employees; and (3) all other county employees. This appeal by CSEA ensued.

A threshold issue of whether PERB had jurisdiction to hear

AFSCME's exceptions must be resolved. All parties received the director's decision on September 20, 1974 and were required to file exceptions by October 4, 1974 (4 NYCRR 201.12). A party may request an extension of time within which to file exceptions and such request "shall be in writing and filed with PERB at least three working days [October 1, 1974] before the expiration of the time required for filing" (4 NYCRR 201.12 [d]). Such a request "shall indicate the position of the other parties with regard to such request, and copies of such request shall simultaneously be served upon each party to the proceeding" (4 NYCRR 201.12 [d]). AFSCME made its request by telephone and did not indicate the position of the other parties. PERB granted an extension in a letter mailed September 25, 1974 to all parties.

While rules of administrative agencies which regulate procedure affecting *substantial rights* of individuals may not be waived *(Matter of Lake Placid Club v Abrams,* 6 AD2d 469, affd 6 NY2d 857) where, as here, no substantial right insulating any party against prejudice was violated, the rule requiring written notice indicating the position of all parties is amenable to relaxation. PERB's letter to all parties dated September 25, 1974 gave then adequate notice and no prejudice to CSEA was involved.

With respect to PERB's decision to direct the creation of three bargaining units, it must be noted that the function of the court is not to determine *de novo* the best or most likely or most advantageous bargaining unit, but is restricted to a finding of whether PERB's decision is supported by substantial evidence *(Matter of Local 342, Long Is. Pub. Serv. Employees, United Mar. Div., Nat. Mar. Union, AFL-CIO v Helsby,* 53 AD2d 805; *Matter of Wakshull v Helsby,* 35 AD2d 183; *Matter of Civil Serv. Employees Assn. v Helsby,* 32 AD2d 131, affd 25 NY2d 842) or is arbitrary or capricious *(Matter of Long Is. Coll. Hosp. v New York State Labor Relations Bd.,* 32 NY2d 314, 321, cert den 415 US 957). The courts recognize PERB's expertise in this complicated area and consider the scope of review to be narrow.

Contrary to CSEA's contention, PERB did not fragmentize an existing single unit previously certified. Rather, it established three units from one which previously had been voluntarily agreed to between the public employer and CSEA. PERB, then, was faced with an original dispute concerning which bargaining representatives, and how many, should rep-

resent the diverse employee interests in Sullivan County. While this posture of the matter does not mean that PERB should not consider the special negotiating concerns of employees in different jobs, and the manner in which those concerns have been handled at the negotiating table, it does mean that PERB is not powerless to act if consideration of all facts substantially proves that some form of fragmentation would advance the interests of the employees, primarily, and the public interests as well. While it is true, as found by the director, that there was an absence of a conflict of interests among groups within the single bargaining unit and that prior negotiating history was generally harmonious, it is equally true, as found by the director, that DPW employees share a community of interests different from other county employees in that such employees are paid differently, are subject to emergency callbacks at night, on holidays and even while on vacation. There are unique safety considerations not applicable to other employees, and within the DPW, unlike other county departments, blue and while collar workers are interchangeable. Probably the most significant difference between DPW employees and other county employees is that decisions on such personnel concerns as hiring, job termination and promotions as well as the issuance of work rules are the responsibility of the commissioner of the DPW. This latter distinction creates a natural antipathy between regular and supervisory DPW employees, recognized by PERB as potentially causative of friction within the DPW. These disparities, all substantially established in the record, raise the question of whether PERB is powerless to act in the absence of a history of disruptive negotiations within the single unit of representation, as argued by CSEA, or if PERB is warranted in fragmentizing an existing single unit *because* the record substantially proves many disparities among the concerns of different county employees that could cause disruptive labor relations. A resolution of this question requires an understanding of the authority legislatively delegated to PERB by section 207 of the Civil Service Law. That statute, for purposes of resolving disparities concerning representation status, charges PERB with the duty (Civil Service Law, § 207, subd 1) to define the appropriate employer-employee negotiating unit taking into account the following standards: "(a) the definition of the unit shall correspond to a community of interest among the employees to be included in the unit; (b) the officials of government at the level of the unit shall have the power * * *

to make effective recommendations * * * with respect to, the terms and conditions of employment upon which the employees desire to negotiate; and (c) the unit shall be compatible with the joint responsibilities of the public employer and public employees to serve the public." Clearly, as found by PERB, all DPW employees other than supervisory personnel have a community of interests in their working conditions different from those whose duty it is to schedule and arrange their working conditions. Equally as clear, as evidenced by the county's recommendation that three units be established, is the public employer's position that administrative convenience and effectiveness would be promoted by the establishment of three units. Lastly, the three units mandated by PERB divide naturally among: (1) all DPW employees; except (2) supervisory personnel; and, (3) all other county employees. That such a division is natural and responsive to paragraph (c) of subdivision 1 of section 207 of the Civil Service Law is evident from the present harmonious relationship between the three units of representation and the county working within the contracts negotiated since PERB's determination. As we said in *Matter of Civil Serv. Employees Assn. v Helsby* (32 AD2d 131, 134-135, *supra)* and reaffirmed in *Matter of Local 342, Long Is. Pub. Serv. Employees, United Mar. Div. Nat. Mar. Union, AFL-CIO, v Helsby (supra),* "The units defined by the board appear to be reasonable and in accord with the standards laid down by the Legislature." PERB's statutory function (Civil Service Law, § 207) is not to resolve competing union interests. Rather, it is to weigh the joint responsibilities of public employers and public employees to serve the public interests and, in furtherance of that end, to define the unit(s) of representation that best represent mutual employee concerns in their daily relations with their employers so that the public's interests are served. In our view, the three units of representation created by PERB serve that goal.

The determination should be confirmed, and the petition dismissed, without costs.

GREENBLOTT, J. P., KANE, MAIN and LARKIN, JJ., concur.

Determination confirmed, and petition dismissed, without costs.