■ In the Matter of the Claim of GARY L. DIEM, Respondent, v DIEM & BUERGER INSURANCE COMPANY et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.—Yesawich, Jr., J. Appeal from a decision of the Workers' Compensation Board, filed September 16, 1987, which ruled that claimant sustained an accidental injury in the course of employment and awarded workers' compensation benefits.

Claimant, vice-president of sales and office management for his employer, Diem & Buerger Insurance Company, sustained

a head injury in the course of an early evening softball game played in a public park and, as a result, was unable to work for 4 to 5 months. He was playing, at the time, in a league composed entirely of employees of insurance companies and insurance agencies. Although claimant was not required to join a team, the employer's president testified that he encouraged claimant to do so because it was good for business in that it provided an exceptional opportunity for developing and enhancing contact with employees of major insurance carriers in the Buffalo area, many of which were members of the insurance softball league. The only financial involvement by the employer was the purchase of claimant's uniform, which featured the employer's name on the back, thus providing some advertising benefit as well.

The employer's workers' compensation insurance carrier controverted coverage, asserting, *inter alia,* that the accident did not arise out of and in the course of claimant's employment. After a hearing and an award of benefits by a Workers' Compensation Law Judge, the carrier sought review, arguing that the injury did not come within Workers' Compensation Law § 10 (1), which delineates when an injury during an off-duty athletic event is compensable. The Workers' Compensation Board affirmed the award of benefits and the employer and its carrier appeal; we affirm.

Workers' Compensation Law § 10 (1) (as amended by L 1983, ch 415) limits compensation for injuries incurred during an athletic event to instances where "the employer (a) requires the employee to participate in such activity, (b) compensates the employee for participating in such activity or (c) otherwise sponsors the activity". Since claimant's participation was voluntary and off duty, the only issue is whether the employer sponsored the activity. The legislative history of the 1983 amendment to this statute indicates an intent to shield employers from liability where their contact with the sporting event is incidental or passive, such as the posting of notices or the publication of scores, but to maintain liability "when participation in an activity is overtly encouraged by the employer or made mandatory as part of the responsibilities of employment" (Executive Dept mem, 1983 McKinney's Session Laws of NY, at 2534; *see also,* mem of Workers' Compensation Board, June 28, 1983, Governor's Bill Jacket, L 1983, ch 415).

Prior to the amendment, the seminal case pertaining to off-duty athletic injuries was *Matter of Tedesco v General Elec. Co.* (305 NY 544), which set forth five factors bearing on compensability, viz., whether: "(1) the activities were on the

premises; (2) the financial support was substantial, not slight; (3) the control by the employer was dominant; (4) advertising and business advantage benefited the employer; (5) the employer could halt the program at any time" *(supra,* at 550). Likewise, a leading commentator observes that employer sponsorship of recreation activities sufficient to warrant compensation liability depends upon the mix of particular factors involved *(see,* 1A Larson, Workmen's Compensation § 22.24 [a]), including employer initiative (1A Larson, Workmen's Compensation § 22.24 [c]) and employer benefit other than nonspecific benefits such as increased worker efficiency and morale (1A Larson, Workmen's Compensation § 22.24 [e]; § 22.30).

In the matter at hand, claimant joined the insurance league at the urging of the employer's president, who deemed the contacts and relationships furthered with insurance carrier employees through peer-group activities such as the softball games and associated socializing afterwards as a necessary means of obtaining favorable treatment and resolving problems between the agency and the carriers. The importance of this forum to the employer's business is underscored by the fact that its president, claimant's father, joined the team after claimant was injured. And while the purchase of a uniform with the employer's logo is indeed nominal in terms of financial commitment and advertising benefit for a large corporation, comparatively speaking, its significance is increased where, as here, the employer is a small, family enterprise. The size of this insurance agency also diminishes the relevance of the fact that claimant's injury occurred off premises and after hours. Thus, while the evidence is far from overwhelming, it is sufficient to support the Board's finding that claimant's taking part in insurance league softball was sponsored by his employer, given the latter's overt encouragement to claimant to do so for the benefit of the employer's business. This case is a far cry from the incidental employer involvement which the Legislature intended to remove from compensability when it amended Workers' Compensation Law § 10 (1).

Decision affirmed, with costs to the Workers' Compensation Board. Kane, J. P., Yesawich, Jr., Levine, Mercure and Harvey, JJ., concur.